UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

PHILADELPHIA FIRE FIGHTERS
UNION, I.A.F.F. LOCAL 22, AFL-CIO,
et. al.,


CIVIL ACTION NO.  02-CV-4653



v.

CITY OF PHILADELPHIA,
          Defendant.

MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF DEFENDANT CITY OF PHILADELPHIA
FOR STAY OF ORDER  PENDING RECONSIDERATION AND APPEAL

The present Motion, filed in part pursuant to FED. R. CIV. P. 62(c), seeks a stay pending

reconsideration and appeal of this Court's Order declaring the City's  Home Rule Charter and Civil

Service provisions prohibiting political contributions from fire fighters to be unconstitutional, and

permanently enjoining the City from enforcing it with respect to fire fighters.

FED. R. CIV. P. 62(c) states, in relevant part:  "When an appeal is taken from an interlocutory

or final judgment granting, dissolving, or denying an injunction, the court in its discretion may

suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms

as to bond or otherwise as it considers proper for the security of the rights of the adverse party."

The City is filing a Motion for Reconsideration of the Court's Order granting Plaintiffs' Motion for

Summary Judgment today, and if the Court denies the Motion and allows its Order to stand, the City

intends to file an appeal to the United States Court of Appeals for the Third Circuit.

*Hilton v. Braunskill,* 481 U.S. 770, 107 S. Ct. 2113, 95 L.Ed.2d 724 (1987), and the lower

court decisions that follow *Hilton*, have established four factors for a district court to consider in

ruling on a motion for stay pending appeal:  (1) whether the stay applicant has made a strong

showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably

injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties

interested in the proceeding; and (4) where the public interest lies.[1]  *Hilton*, 481 U.S. 770 at 776;

*Republic of the Philippines v. Westinghouse Electric Corp.,* 949 F.2d 653 (3d Cir. 1991);

*Freethought Society, et al. v. Chester County,* 194 F.Supp.2d 437 (E.D. Pa. 2002).

These are the same factors that a court of appeals must consider in deciding a motion for

stay under FED. R. APP. P. 8.  *Hilton*, 481 U.S. 770 at 776.  "While these factors guide the court's

analysis, no single factor is determinative."  *Anderson v. City of Philadelphia,* 1987 WL 17743 at

*2 (E.D. Pa. 1987).  The Supreme Court noted that "since the traditional stay factors contemplate

individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."  *Hilton*

481 U.S. at 777.

As demonstrated below, a proper balancing of the relevant considerations requires granting

the present motion.  Most notably, in reaching its decision, this Court likely did not have the benefit

of a Supreme Court decision issued after briefing was completed in this case that contradicts two

major assertions underpinning the Court's decision in this case.

Likelihood of Success on Reconsideration or Appeal

Although it is difficult to reargue the merits of this case before the same court that has issued

the adverse judgment, in this case success is likely because, as explained more fully in our Motion

for Reconsideration, this Court's decision is at odds with a Supreme Court decision issued after

briefing was completed in this case, as well as two federal appellate courts and one state Supreme

Court.  In *Federal Election Commission v. Beaumont*, 123 S.Ct. 2200, 2210 (U.S. June 16, 2003),

the United States Supreme Court explicitly held that political contributions are not core First

Amendment speech, and that strict scrutiny therefore does not apply in cases concerning political

contribution bans.  Furthermore, the Fifth and Eight circuits, as well as the Missouri Supreme Court,

have upheld similar provisions prohibiting police and fire fighters from making political

contributions.  *Reeder v. Kansas City Board of Political Commissioners*, 733 F.2d 543, 547-548 (8th

Cir. 1984); *Pollard v. Board of Police Commissioners*, 665 S.W. 2d 333, 341 (Mo. 1984);

*International Assoc. of Firefighters of St. Louis, Franklin and Jefferson Counties v. City of*

---

[1]     While no specific Rule contemplates motions for reconsideration, we presume that the same
standards apply as those that govern motions for stays pending appeal.

*Ferguson*, 283 F.3d 969, 971-972 (8th Cir. 2002); *Wachsman v. City of Dallas*, 704 F.2d 160, 173 (5th Cir. 1983). This Court's decision is directly at odds with all of these holdings. <u>See</u> Opinion at 7, 13-14.

<u>Harm to the City's Interests</u>

As for the second factor in the Court's decision as to whether to grant a stay, the City's interests will be irreparably harmed absent a stay in two ways. First, as shown in the attached affidavit from Evan Meyer, the City attorney charged with advising City employees on political activities restrictions, ensuring that City employees are familiar with the Charter restrictions that guide them is a difficult task. It is well established that City employees depend upon consistent standards in complying with restrictions, and substantive changes in the rules will almost certainly result in uncertainty, confusion, and noncompliance.

There are several precedents demonstrating such confusion. For example, the Pennsylvania State Ethics Act has a provision restricting former government employees from representing clients on any matter before their former governmental body. Exhibit B. Court decisions and decisions of the State Ethics Commission have gone back and forth on whether this rule applies to attorneys, or whether attorneys are governed exclusively by the Rules of Professional Conduct, leaving former government attorneys uncertain as to when they can represent certain clients before their former governmental body. Exhibit B (providing other examples). Moreover, such confusion likely leads to noncompliance. *Id.*

If firefighters are told that they can contribute money, and are subsequently told that they cannot do so, confusion would increase and therefore compliance would decrease. Firefighters would be uncertain whether they could contribute money in particular, and whether they could engage in political activities in general. Thus, the City would suffer irreparable harm if the contribution restrictions are changed significantly by this Court's order for a time and then revert back to their original form should the reconsideration motion or appeal be successful. *See* Exhibit B.

Second, absent a stay pending reconsideration or appeal, the City will be harmed in that certain of the very evils that the contribution limit seeks to avoid -- political influence and public

perception of political influence -- will be irreparably ingrained into the Fire Department.  If this Court denies the stay motion, but is then reversed on appeal, the harm of political influence will far outlast the date of the reversal.  This is because the beneficiaries of the political influence -- presumably uniformed individuals in the Fire Department who might receive positions based upon politics but not upon merit -- will continue to remain in the Department, greatly jeopardizing the public safety, and the public confidence in the integrity of the Fire Department.

Harm to Plaintiffs If Stay Is Granted

Such harm to the City would outweigh any harm plaintiffs would suffer if the Order is stayed pending appeal.  While this Court expressed concern about stays in First Amendment cases in *Freethought Society v. Chester County*, 194 F. Supp.2d 437 (E.D. Pa. 2002), in this case the First Amendment harm is much more attenuated, and the equities balance differently, for three reasons.

First, given that one of the plaintiffs in this case is the Philadelphia Fire Fighters Union, who represents all of the uniformed firefighters, there is likely to be a divergence of opinion as to whether it is beneficial in the first place to pursue First Amendment rights.  Although there are certainly uniformed union members who would choose to make political contributions if given the opportunity, there likely are many members who prefer the contribution restriction, which removes the possibility of any pressure -- political or otherwise -- to contribute.  *See United States Civil Service Comm'n v. National Association of Letter Carriers*, 413 U.S. 548, 566 (1973) (recognizing interest in "mak[ing] sure that Government employees would be free from pressure").  Thus, this case is unlike *Freethought*, where the plaintiff organization was composed of "like-minded" members, *Freethought Society v. Chester County*, 191 F. Supp.2d 589, 592 (E.D. Pa. 2002), and the determination of whether the plaintiffs in this case even wish to assert their First Amendment rights is much more ambiguous.  *See also Beaumont*, 123 S.Ct. at 2206 (noting that individual members of union or corporation deserve protection).

Second this case differs from *Freethought* because in that case the plaintiffs' interest in having the County stop violating the Establishment Clause was a core First Amendment concern.  In this case, on the other hand, as noted above, the Supreme Court recently reaffirmed in *Beaumont*

4

that political contributions are not core First Amendment expression, even when completely banned. Rather, they are "marginal" speech. 123 S.Ct. at 2210. Indeed, the Court in *Buckley* was more concerned about the harm contribution limitations would have on the free expression of political campaigns than it was about the harm that limitations have upon the free speech rights of donors. *Buckley v. Valeo*, 424 U.S. 1, 21-22 (1976).

Finally, as explained in our Motion for Reconsideration, the importance of the First Amendment contribution right, which the Supreme Court has already deemed marginal in the private sector context, is even less important in the Government employment context. *Letter Carriers*, 413 U.S. at 564 ("[The] government has an interest in regulating the conduct and the speech of its employees that differ(s) significantly from those it possesses in connection with regulation of the speech of the citizenry in general."); see also *Federal Firefighters Association v. United States*, 723 F. Supp. 821, 824 (D.D.C. 1989) (government employees have no constitutional right to strike).

The Public Interest

With respect to the public interest, this Court's Opinion does point out that the public has an interest in having firefighters be heard as a monetary matter in the political forum, *see* Opinion at 11, but the public also has at least as great an interest in knowing that its firefighters are free from political pressure and influence in the work place. The public interest also lies in the City's ability to keep its political activities restrictions as consistent as possible, *see* Exhibit B, as well as in the City's ability to keep crucial public safety workers like fire fighters free from political influence.

## CONCLUSION

For all of the above reasons, the City respectfully requests that this Honorable Court stay its

October 6, 2003 Order pending the disposition of the appeal of this matter.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEP'T
NELSON A. DIAZ, City Solicitor

_____

By:  Shelley Smith
*Chief Deputy City Solicitor*
Jane Lovitch Istvan
*Deputy City Solicitor, Appeals*
Craig Gottlieb
*Deputy City Solicitor, Appeals*
Attorneys for Defendant

City of Philadelphia Law Department
One Parkway Building, 17th Floor
1515 Arch Street
Phila., PA  19102
(215) 683-5015