**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

PHILADELPHIA FIRE FIGHTERS
UNION, I.A.F.F. LOCAL 22, AFL-CIO,
et. al.,

**CIVIL ACTION NO.  02-CV-4653**

v.

CITY OF PHILADELPHIA,
                    Defendant.

**MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION OF DEFENDANT CITY OF**
**PHILADELPHIA FOR RECONSIDERATION**

The City of Philadelphia moves this Court to reconsider its October 6, 2003 Order

granting Plaintiffs' Motion for Summary Judgment because the Court's Opinion in support of the

Order is squarely at odds with a Supreme Court decision issued after briefing was completed in

this case, as well as two federal appellate courts and one state Supreme Court.

In *Federal Election Commission v. Beaumont*, 123 S.Ct. 2200, 2210 (U.S. June 16,

2003), the United States Supreme Court explicitly held that political contributions are not core

First Amendment speech, and that strict scrutiny therefore does not apply in cases concerning

political contribution bans.  Furthermore, the Fifth and Eight circuits, as well as the Missouri

Supreme Court, have upheld similar provisions prohibiting police and fire fighters from making

political contributions.  *Reeder v. Kansas City Board of Political Commissioners*, 733 F.2d 543,

547-548 (8th Cir. 1984); *Pollard v. Board of Police Commissioners*, 665 S.W. 2d 333, 341 (Mo.

1984); *International Assoc. of Firefighters of St. Louis, Franklin and Jefferson Counties v. City*

*of Ferguson*, 283 F.3d 969, 971-972 (8th Cir. 2002); *Wachsman v. City of Dallas*, 704 F.2d 160, 173 (5th Cir. 1983).

This Court's decision is directly at odds with all of these holdings.  *See* Opinion at 7, 13-14.

The Proper Level Of First Amendment Scrutiny

In the case *sub judice,* the City cited *Buckley v. Valeo*, 424 U.S. 1 (1976), for the proposition that political contributions are marginal speech for First Amendment purposes, and that therefore regulations governing them are not subject to strict scrutiny, because "[w]hile contributions may result in political expression if spent by a candidate or an association to present views to the voters, the transformation of contributions into political debate involves speech by someone other than the contributor."  424 U.S. at 21.

This Court rejected the City's assertion, holding that *Buckley* only applies when a regulation limits, as opposes to bans, expenditures, *see* Opinion at 13-14, and it applied a strict scrutiny standard because it asserted that strict scrutiny applies in all political expression cases. Opinion at 7, 13-14.

The respondent in *Beaumont* made a similar argument that "the ban on its contributions should be subject to a strict level of scrutiny, on the ground that [the anti-contribution provision] does not merely limit contributions, but bans them."  123 S.Ct. at 2210.  The Court rejected this assertion, holding that the level of scrutiny varies according to the importance of the speech at issue, not how much that speech is abridged.  *Id.*  As the majority opinion explained, the Supreme Court's "basic premise . . .  in setting First Amendment standards for reviewing political financial restrictions" is that "the level of scrutiny is based on the importance of the 'political activity at issue' to effective speech or political association."  *Id.*

Furthermore, the Court held that contributions were of merely marginal importance, so contribution bans did not require exacting scrutiny.  123 S. Ct. at 2211.  "Going back to [*Buckley*], **restrictions on political contributions have been treated as merely 'marginal' speech restrictions subject to relatively complaisant review under the First Amendment**, because contributions lie closer to the edges than to the core of political expression."  *Id*. (emphasis supplied).  Thus, under *Beaumont*, political contribution bans neither concern "core" First Amendment speech, nor are they subject to strict scrutiny.  This Court's contrary views undergird its opinion in this case, and thus, *Beaumont* compels this Court's reconsideration of its Order.[1]

According to *Beaumont*, contribution limits pass constitutional muster if they satisfy the "lesser demand" of being "closely drawn" to match a "sufficiently important interest."  *Id*.[2]  And in this case, that demand is further lessened by the fact that the restrictions at issue apply only to public employees, and "government has an interest in regulating the conduct and the speech of its employees that differ(s) significantly from those it possesses in connection with regulation of

---

[1]    In *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454 (1995) ("*NTEU*"), and *Swartzwelder v. McNeilly*, 297 F.3d 228 (3d Cir. 2002), two opinions cited by this Court (Opinion at 8) in support of its conclusion the Charter provision is unconstitutional, the First Amendment interests at issue were "significant," *NTEU*, 513 U.S. at  468-469 (ban on honoraria), and "important," *Swartzfelder*, 297 F.3d at 238 (limitation on expert witness testimony), in contrast to the marginal First Amendment interest in making contributions.

[2]    This Court's decision cited *Buckley* and *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 386-88 (U.S. 2000), for its assertion that strict scrutiny applies in contribution cases.  Opinion at note 8.  But while *Nixon* noted that portions of *Buckley* might appear to require a strict scrutiny standard, *Buckley* did not in fact do so because it was primarily addressing expenditure limitations.  *See* 528 U.S. at 386.  *Nixon* rejected a strict scrutiny standard for contributions, holding that "different standards" govern expenditure and contribution limits, and noting that "restrictions on contributions require less compelling justification than restrictions on independent spending."  528 U.S. at 387.  In a footnote, *Nixon* contrasted language from its strict scrutiny cases with the standard it set forth for contribution limits.  *Id*. & n.3.

the speech of the citizenry in general." *United States Civil Service Comm'n v. National Association of Letter Carriers*, 413 U.S. 548, 564 (1973) ("*Letter Carriers*").  In light of *Beaumont*, this Court must re-examine this case and accord the City's legislative judgment considerably more deference.

For example, the Court should reconsider its conclusion that *Letter Carriers* and other Hatch Act cases do not apply here.  While this Court rejected the City's citation of *Letter Carriers*, asserting that the Hatch Act's restrictions on political activities are too different from a ban on contributions, Opinion at 13, *Letter Carriers* found that in addition to the restrictions it was upholding, the federal government could also regulate a panoply of political activities of federal employees, including "actively participating in fund-raising activities for a partisan candidate or political party." *Id*. at 556.  Making a contribution to a political candidate is actively participating in fund-raising activities.  *See International Brotherhood of Electrical Workers v. St. Louis County*, 117 F. Supp.2d 922, 933 (E.D. Mo. 2000).  Indeed, *Letter Carriers* itself recognized the vitality of Supreme Court precedent upholding the "prohibition forbidding federal employees from giving money for political purposes." *Letter Carriers*, 413 U.S. at 555.

This Court distinguished *Letter Carriers* on the ground that it is <u>more</u> permissible for the government to prohibit more active political expression, like running for office or soliciting contributions in the Hatch Act cases, than it is for the government to prohibit less active political expression like making political contributions in this case.  However, *Beaumont* calls this Court's distinction into question because it holds that the level of scrutiny of restrictions upon political expression should vary based upon "the importance of the political activity." 123 S.Ct. at 2210.  In other words, where the importance of the speech is low (<u>e.g.</u>, contributions), the level of scrutiny should <u>drop</u>.  This Court's decision made no attempt to account for the fact that

political contributions, as opposed to more active political expressive activities such as political campaigning, are "marginal" speech, and thus, the City's restrictions upon contributions are entitled to greater deference.[3]

Application of the Proper Level of First Amendment Scrutiny

If the Court had viewed the City's anti-contribution provision through this lens of deference, it likely would have reached a different result, as the restriction is closely drawn to important interests.

In deciding this issue, the Court should also take into account the fact that at least three prior Circuit Court decisions and one state court decision have upheld the constitutionality of political contribution bans. *Reeder v. Kansas City Board of Political Commissioners*, 733 F.2d 543 (8th Cir. 1984) (upholding Missouri statute prohibiting police officers from making political contributions for "any political purpose whatever"); *Pollard v. Board of Police Commissioners*, 665 S.W. 2d 333 (Mo. 1984) (same); *International Assoc. of Firefighters of St. Louis, Franklin and Jefferson Counties v. City of Ferguson*, 283 F.3d 969 (8th Cir. 2002) (charter provision prohibiting certain city employees from contributing to mayoral or council candidates); *Wachsman v. City of Dallas*, 704 F.2d 160 (5th Cir. 1983) (city charter prohibiting all city employees from contributing to city council candidates).

Further, dicta in another United States Supreme Court decision suggests that the Court would approve political contribution bans for public employees. As the Eighth Circuit observed in *Reeder*, while the Supreme Court has never directly addressed the constitutionality of political

---

[3] Additionally, given that limits upon political contributions are part of a "longstanding prohibition," *Letter Carriers*, 413 U.S. at 555, the Court should exercise even greater restraint in reviewing the City's restriction because "judicial restraint is particularly warranted where, as here, we deal with a [legislative] judgment that has remained essentially unchanged." *Beaumont*, 123 S.Ct. at 2210 n.9.

contribution bans for public employees, dicta in *Kelley v. Johnson*, 425 U.S. 238 (1976), implies

that the Court would consider such bans to be valid restrictions upon public employees. *See*

*Reeder*, 733 F.2d at 547-48.

*Kelley* rejected a challenge to a regulation on the hairstyle of police officers in Suffolk

County, New York. After noting that the Court has "sustained comprehensive and substantial

restrictions upon activities of both federal and state employees lying at the core of the First

Amendment," the Court described the various restrictions imposed on Suffolk County police

officers which included a prohibition upon "contributing or soliciting political contributions."

*See* 425 U.S. at 245-46. The Court then went on to uphold the hairstyle restrictions in spite of

noting that all of the restrictions it listed "infringe on respondent's freedom of choice in personal

matters." *Id.* Therefore, this Court should uphold the City's anti-contribution provision, where

the provision is closely drawn to important interests.

Each of the City's reasons in this case supporting the ban -- such as decreasing pressure

upon firefighters, avoiding political influence, and avoiding public perception of political

influence -- are well established. *E.g.*, *Letter Carriers*, 413 U.S. at 566 (recognizing importance

of "mak[ing] sure that Government employees would be free from pressure"); *Letter Carriers*,

413 U.S. at 565 ("It is not only important that the Government and its employees in fact avoid

practicing political justice, but it is also critical that they appear to the public to be avoiding it.").

Respectfully, the Court's ruling (Opinion at 9-10) that the ban is not tailored to the

furtherance of these interests is mistaken. Instead of applying to City employees in general, or

even to the entire Fire and Police Departments, the ban applies only to uniformed fire fighters

and police officers -- *i.e.*, those individuals who arguably have the most restrictive effect upon

the citizens, and who, if chosen by politics and not by merit, could cause the greatest harm to the

6

City.  *Reeder v. Kansas City Board of Political Commissioners*, 733 F.2d 543, 547 (8th Cir.

1984) (police expected to relinquish greater rights because vested with greater power); *Pollard v.*

*Board of Police Commissioners*, 665 S.W. 2d 333, 339 (Mo. 1984) (same).

In concluding that the ban was unconstitutional, the Court reasoned that the City failed to

show that a fire fighter's political contributions would cause that firefighter to gain political

influence.  Opinion at 9-10.  This reasoning, however, ignores the legislative history detailing

that the ban was necessary, among other reasons, because police officers and fire fighters were

being hired and promoted based upon their political and economic support of certain politicians,

and because such actions eroded public confidence.  *See* Defendant's Brief at 11-13; *see also*

*Buckley*, 424 U.S. at 17-21.

The Court's focus -- upon the fact that now, after many years of the Charter's political

activities restrictions being in effect, the present Fire Commissioner avers that he is not

influenced by the requests from politicians he gets with respect to personnel matters, Opinion at

9 -- takes the wrong approach.

The Charter is intended to protect the City from Commissioners who are less ethical and

less professional than Commissioner Hairston.  Further, the Court is looking with hindsight at

how well City government operates to deflect political influence on its fire fighters after many

years of enforcement of our political activities restrictions.  If the Fire Department had not been

protected from political influences by the Charter's various political activities restrictions for

these many years, it is doubtful that the Fire Commissioner would have the luxury to turn down

political requests with the same ease that he can currently turn down such requests.

Requests also do not have to come in at the Commissioner level.  A call from a City

Council member to a mid-level Fire Department manager asking for special treatment for a

favored fire fighter (who happens to be a contributor) is certainly not hard to imagine. The

Charter ensures that those calls will not happen, and that mid-level managers, who might not be

as sensitive to the rules of propriety as is the Commissioner, are not subjected to these political

pressures.

Additionally, the Court's other basis for its holding of unconstitutionality -- that the fact

that politicians attempt to influence Fire Department personnel decisions now, even without

contributions, proves that the contributions are irrelevant to the politicians' desire to influence

Fire Department personnel decisions, Opinion at 9 -- proves too much. In all likelihood,

politicians would make far more personnel requests if contributions were permitted than they do

in the current non-contribution world.[4] One does not have to disparage a Councilperson or other

elected official to note that significant contributors are likely to get a favorable reception when a

request for a favor arises.

Accordingly, this Court should reconsider its decision holding that the City's anti-

contribution provision was unconstitutional.

Equal Protection

As for the Court's ruling on the Equal Protection claim, respectfully, the Court is

improperly second-guessing the City Charter in assuming that the City should not have a greater

interest in insuring that front line, uniformed fire fighters are free from political pressure and

influence than are other City workers.

---

[4] Furthermore, the fact that the prohibition is longstanding and prophylactic reduces the quantity
of evidence that the City needs to satisfy judicial scrutiny. *Nixon*, 528 U.S. at 391 ("The
quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative
judgments will vary up or down with the novelty and plausibility of the justification raised.");
*Federal Election Commission v. National Right to Work*, 459 U.S. 197, 210 (1982) ("Nor will we
second-guess a legislative determination as to the need for prophylactic measures where
corruption is the evil feared.").

Under the Equal Protection Clause's rational basis test, "a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose," Heller v. Doe, 509 U.S. 312, 320 (1993), even if "the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." Brian B. ex rel. Lois B. v. Pennsylvania Department of Education, 230 F.3d 582, 586 (3d Cir. 2000), cert. denied, 532 U.S. 972 (2001). Furthermore, the government has "no obligation to produce evidence to sustain the rationality of a statutory classification." Central State University v. American Association of University Professors, 526 U.S. 125, 128 (1999). On the contrary, "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973) (emphasis added).

This Court ruled that the contribution restriction violated the Equal Protection Clause insofar as the City failed to show how treating fire fighters differently from other City employees rationally furthered the City's interests in minimizing political influence. Opinion at 15.

This ruling was mistaken in two respects. First, plaintiffs have the obligation to show why the classification is irrational; the City does not have the obligation to prove the classification's rationality. Second, in any event the distinction the City drew between fire fighters and other City employees is rational. Although the City hopes that none of its employees are politically influenced, the adverse consequences flowing from a uniformed fire fighter obtaining a job based upon political influence, and not upon merit, are much different than the adverse consequences flowing from other City workers obtaining a job based upon influence.

Accordingly, it is rational for the City to place higher political influence barriers upon its

fire fighters.

<div style="margin-left: 50%;">

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEP'T
NELSON A. DIAZ, City Solicitor


_____

By:  Shelley Smith
*Chief Deputy City Solicitor*
Jane Lovitch Istvan
*Deputy City Solicitor, Appeals*
Craig Gottlieb
*Deputy City Solicitor, Appeals*
Attorneys for Defendant

</div>

City of Philadelphia Law Department
One Parkway Building, 17th Floor
1515 Arch Street
Phila., PA  19102
(215) 683-5015