IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILADELPHIA FIRE FIGHTERS' UNION, I.A.F.F. LOCAL 22, AFL-CIO, et al., : : : : Plaintiffs, : : v. : : CITY OF PHILADELPHIA, : : Defendant : _____: | CIVIL ACTION<br><br>No.  02-CV-4653 |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION**

**I.   INTRODUCTION**

Plaintiffs, Philadelphia Fire Fighters' Union, IAFF Local 22, AFL-CIO (the "Firefighters"), Thomas O'Drain, Gerard Kots and Anthony Cubbage submit this Brief in Opposition to the City of Philadelphia's Motion for Reconsideration of the Court's October 6, 2003 Memorandum and Order in this case.

In its Motion, City continues its refusal to address the problem at the core of this dispute – that its Anti-Contribution Rules impose a drastic restriction on the expressive activity of the Firefighters that far exceed restrictions applied to the vast majority of City employees, for no apparent reason.  Instead, the City argues the undisputed point that the Supreme Court has deemed certain contribution limits permissible under the First Amendment, and relies on outdated and irrelevant decisions from outside of this federal circuit to characterize the Court's Memorandum and Order as "mistaken," "at odds" with controlling precedent and manifestly erroneous.

Throughout this litigation, the Firefighters have agreed that the City has the authority to regulate within constitutional bounds the political activity of its public employees. The Firefighters have also agreed that the U.S. Supreme Court has upheld limits on the expressive activity of making campaign contributions.

In bringing their initial challenge, the Firefighters simply asserted that one small aspect of the City's multi-faceted regulatory scheme governing the political activity of its public employees – the Firefighter Anti-Contribution Rules – goes too far. The Anti-Contribution Rules impose a prior restraint on protected expressive activity of making a political contribution, and because of this the City was required to satisfy the demanding balancing test set forth by the Supreme Court in <u>United States v. National Treasury Employees Union (NTEU)</u>, 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed. 2d 964 (1995). For reasons clearly set forth in the Court's October 6, 2003 Memorandum and Order, the City failed to satisfy this test. But in its Motion, the City ignores this critical conclusion, and offers absolutely nothing to alter the bedrock requirement that it satisfy the <u>NTEU</u> test in order to justify the Anti-Contribution Rules. Because of this, the City's Motion for Reconsideration must be denied.

## II. ARGUMENT

### A. The City The City Has Not Stated Grounds Entitling It To Reconsideration

Under Local Rule 7.1(g) and Fed. R. Civ. P. 59(e), a motion for reconsideration will be granted <u>only</u> on one of three grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued the earlier order; or (3) the need to correct a clear error of law or fact or to

prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

Reconsideration of court's order is an "extraordinary remedy," and should be given only sparingly and in the interests of finality and conservation of scarce judicial resources. U.S. v. Whittaker, 201 F.R.D. 363, 2001 U.S. Dist. LEXIS 22778 (E.D. Pa. 2001). See also Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995); Reshard v. Main Line Hosp., Inc., 2003 U.S. Dist. LEXIS 6372 (E.D. Pa. April 16, 2003)(motions for reconsideration should be granted only "sparingly").

A motion for reconsideration may not be used as a means to reargue a case or to ask a court to rethink a decision it has made. Waye v. First Citizen's Nat. Bank, 846 F. Supp. 310, 314 (M.D. Pa.), aff'd, 31 F.3d 1175 (3d Cir. 1994)(table); Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993). Instead, the purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 398 (E.D. Pa. 2002).

Although the City seeks reconsideration, it has chosen to ignore the standards for reconsideration in its Motion, or to explain exactly how its arguments fit into that scheme. The City does not allege any factual errors or present any newly-discovered evidence. Instead, the City appears to challenge the legal correctness of the Court's October 6, 2003 Memorandum and Order. Therefore, the questions placed before the Court by the City appear to be: (1) whether there has been a change in controlling law since the submission of briefs that requires reconsideration, and (2) whether the City

3

has identified a clear error of law in the Court's Memorandum and Order of October 6, 2003. In both instances, the answer is no.

**B. There Has Been No Change in Controlling Law Since the Submission of Briefs. The City Continues to Misinterpret the Significance of <u>Buckley v. Valeo</u> as Applied to the Anti-Contribution Rules.**

In its Motion, the City of Philadelphia continues to confuse the U.S. Supreme Court's holding in <u>Buckley v. Valeo</u>, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), by focusing on the distinction made by the Court in that case (and reaffirmed by the Court in <u>Federal Election Commission v. Beaumont</u>[1]) between political contributions and political expenditures. The City argues that the Court's June 2003 <u>Beaumont</u> decision requires a lesser level of scrutiny in political contribution cases, and that this decision somehow would require a different result in this case. But the City is mistaken, for two reasons.

First, the Firefighters have never disputed the validity of the distinction between political-expenditure restrictions and political-contribution restrictions in terms of First Amendment analysis. This distinction has remained in place since <u>Buckley</u> and was recently reiterated by the Court in <u>Beaumont</u>. But just as the Firefighters acknowledge this distinction, the City likewise cannot dispute that in <u>Buckley</u> the Supreme Court acknowledged that political contributions are a form of political expression protected by the First Amendment. <u>Buckley</u> and its progeny are relevant here only to the extent that they recognize political contributions as a form of political expression. Once this point has been established, this case is governed by precedent concerning the regulation of

---

[1] 123 S.Ct 2200, (U.S. June 16, 2003).

public employee speech, because the Anti-Contribution Rules impose a prior restraint on protected expressive activity of making a political contribution.

The controlling precedent on this issue is the Supreme Court's decision in <u>United States v. National Treasury Employees Union (NTEU)</u>, 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed. 2d 964 (1995), which requires a public employer to satisfy a particularly stringent balancing test in order to justify a wholesale ban on public-employee speech. In <u>Swartzwelder v. City of Pittsburgh</u>, 297 F.3d 228, 235 (3d Cir. 2002), the Third Circuit Court of Appeals specifically adopted the <u>NTEU</u> test for use in weighing the constitutionality of such speech restrictions in this federal circuit. In its Memorandum and Order, this Court correctly identified and applied the <u>NTEU</u> and <u>Swartzwelder</u> decisions, when it utilized the <u>NTEU</u> balancing test to evaluate the constitutionality of the Anti-Contribution Rules. No judicial decision issued since the parties submitted their summary-judgment briefs, including <u>Beaumont</u>, does anything to alter the applicability of <u>NTEU</u> here. Thus, the Court applied the appropriate legal precedent and there has been no intervening change in that precedent since the submission of briefs. Because of this, there is no basis for reconsideration.

Second, the <u>Beaumont</u> decision relied on by the City presents very different facts than the instant case, because that case addressed the right of a not-for-profit advocacy corporation to make political contributions. And while the corporation in that case, North Carolina Right to Life, was prevented from making direct political contributions, it also was permitted to make contributions via its own political action committee. Despite this valid alternative, the corporation challenged the federal ban as unconstitutional.

5

The Supreme Court rejected this challenge, determining that the limit on corporate contributions should not be subjected to strict scrutiny, and that the ban did not run afoul of the First Amendment. In its decision, the Court reiterated <u>Buckley</u>'s longstanding distinction between political expenditures and political contributions, and also cited its concerns regarding potential abuse of the corporate form. Further, the Court specifically noted the ability of North Carolina Right to Life to engage in political speech despite the ban by utilizing its political action committee or through private, individual donations by employees.

As applied in the context of the City's Motion, the <u>Beaumont</u> decision adds nothing at all to the determination of the constitutionality of the Anti-Contribution Rules. In <u>Beaumont</u>, the Supreme Court merely refined the well-established distinction between political expenditures and contributions in terms of First Amendment scrutiny, which date back to <u>Buckley</u>. The Court also reinforced the appropriateness of bans on corporate-contributions, specifically noting the alternate methods of political expression afforded those entities by virtue of political action committees or individual employee contributions.

In contrast, in this case the City of Philadelphia has not implemented a ban on corporate (or union) contributions, but instead has imposed a wholesale ban on individual political contributions by firefighters, even to a political action committee, thus leaving those individuals no other avenue in which to express their views in the form of contributions. This restriction requires application of the <u>NTEU</u> balancing test, as the Court did in its October 6 Memorandum and Order.

Based on the above, it is clear that the <u>Beaumont</u> decision does not require a different result in this case. None of the expenditure/contribution rhetoric offered by the City relieves it of its obligation to satisfy the <u>NTEU</u> test to justify the Anti-Contribution Rules. Because the Court applied that test, and because there has been no intervening change in controlling law that would require the Court to reconsider its October 6, 2003 Memorandum and Order, the City's Motion must be denied.

**C. There is No Clear Error of Law in the October 6, 2003 Memorandum and Order**

A motion for reconsideration is not properly grounded on a request that a court reconsider repetitive arguments that have been fully examined by the court. <u>Blue Mountain Mushroom</u>, 246 F.Supp. 2d at 398. And motions for reconsideration also may not be used to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided. Rather, reargument may be appropriate only where a Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. <u>Sonders v. PNC Bank</u>, 2003 U.S. Dist. LEXIS 17961, at 3-4 (E.D. Pa. October 9, 2003)(citing <u>Brambles USA, Inc. v. Blocker</u>, 735 F. Supp. 1239, 1241 (D.Del. 1990)).

**1. The First Amendment Claim**

In its Motion, the City argues that the Court's October 6, 2003 Memorandum and Order is "directly at odds" with two 20-year old decisions from other federal circuits, one 20-year old decision from a Missouri state court, and a 2002 decision from the 8th Circuit Court of Appeals. But the City raised two of these cases earlier in this litigation,

and the remaining two merely represent either outdated or inapplicable interpretations by other federal courts on this issue.

First, the City cites three cases decided in 1983 and 1984, in which courts outside of the Third Circuit upheld contributions on certain public employees. Of course, the City neglects to mention that each of these cases was decided well-before the Supreme Court issued its decision in NTEU, which set forth the more demanding test used by the Court in this case. Because of this, Wachsman v. City of Dallas, 704 F.2d 160 (5th Cir. 1983), Reeder v. Kansas City Board of Political Commissioners, 733 F.2d 543 (8th Cir. 1984) and Pollard v. Board of Police Commissioners, 665 S.W.2d 333 (Mo. 1984) each were decided under the decidedly less arduous Pickering v. Board of Education standard, which clearly does not apply since NTEU.[2] Therefore, these cases are both outdated and irrelevant to this proceeding.[3]

The City does manage to cite one post-NTEU decision in support of its position. In International Association of Firefighters of St. Louis and Jefferson Counties v. City of Ferguson, 283 F.3d 969 (8th Cir. 2002), the 8th Circuit Court of Appeals declined to

---

[2] The NTEU test is more difficult for a government employer to satisfy than the Pickering test for two reasons. First, the Pickering test requires a court to weigh only a punished employee's interest in their speech, while the NTEU test requires the court to weigh the interests of all employees whose speech is, or in the future, will be restricted, plus all members of the public who have an interest in that speech. Second, while the Pickering test requires the government to merely assert that the restricted speech interferes with the efficiency of government services, the NTEU test requires the public employer to actually show how the restricted expression necessarily would have impacted the actual operation of government. See Frenchtown Charter Township, 2003 U.S. Dist. LEXIS 2696, at 16.

[3] In addition, the City already has unsuccessfully cited both the Pollard and the Wachsman decisions in support of its position in this case. See City Memorandum in Support of Motion to Dismiss.

apply the NTEU-test to the contribution-restriction imposed on public employees.[4]  But this refusal stands in stark contrast to decisions by the 2nd and 10th Circuits, to apply NTEU in such cases.  See Latino Officers Assoc. v. City of New York, 196 F.3d 458 (2d. Cir. 1999); Arndt v. Koby, 309 F.3d 1247 (10th Cir. 2002).  And of course, in this circuit, the Third Circuit specifically adopted the NTEU test as the appropriate standard for measuring the unconstitutionality of a prior restraint on public employee speech. in Swartzwelder, 297 F.3d at 234-35.  Thus, the Ferguson decision merely reflects the differing, minority view of the 8th Circuit, in a case with decidedly different facts.

Because of this, it is clear that the City has failed to satisfy its heavy burden to show that the Memorandum and Order its deems "at odds" with outdated and irrelevant decision by state and federal courts outside of this circuit warrants reconsideration.  The City's Motion must be denied on this basis, as well.

### 2.  The Equal Protection Claim

In its Motion, the City argues that the Court misapplied the rational basis test for determining the constitutionality of the Anti-Contributions Rules.  This is incorrect.  In its Memorandum and Order, the Court correctly determined that the Rules failed to survive scrutiny even under a rational basis test.  The record, and the Court's decision, are replete with evidence of the inherent irrationality of the City's speech restriction.

---

[4] It is significant that the restriction in Ferguson was limited only to contributions to mayoral or council candidates, as opposed to the far broader restriction imposed by the City here.  Even if Ferguson applied, then, the Firefighters would direct to the Court to their overbreadth arguments, which the Court deemed unnecessary to resolve in light of its determination that the Anti-Contribution Rules are unconstitutional.

First, there is no merit to the City's contention that allowing public employees to make political contributions will somehow impair that public confidence. Indeed, if this were the case then public confidence in government would be virtually non-existent, since the vast majority of public-sector employees already are free to make political contributions. The Court correctly determined that there is no rational reason to expect that the addition of 2400 firefighters to the hundreds of thousands of employees who already have the right to make political contributions would impair public confidence in government.

Second, even if there were some correlation between public-employee campaign contributions and public confidence in government, the City failed to explain exactly how restricting the political speech of firefighters while permitting the same conduct by some 20,000 other City employees – including civilian Fire Department employees – is rationally-related to serving this interest.

In sum, the record in this case showed the City's Anti-Contribution Ban distinguishes Firefighters from federal employees, state employees, City employees from other Departments, and even other Fire Department employees, in the area of protected political expression. There is simply no rational reason to permit civilian employees of such number and influence to make political contributions while at the same time refusing that form of expression to uniformed members of the Fire Department.

Because there is neither a rational basis for distinguishing the Firefighters from other City employees in the area of voluntary political contributions, the Court correctly determined that the Anti-Contribution Rules clearly violate the Firefighters' right to equal

protection of law guaranteed by the Fourteenth Amendment to the United States Constitution.  There is no error of law, let alone a manifest error on the scale required to warrant reconsideration.  The City's Motion must be denied.

### III. CONCLUSION

Based on the above, the City of Philadelphia is not entitled to reconsideration of the Court's October 6, 2003 Memorandum and Order, on either of the following determinations against the City of Philadelphia: (1) that the Anti-Contribution Rules violate the Firefighters' First-Amendment rights of freedom of speech and association; and (2) that the Anti-Contribution Rules violate the Firefighters' equal protection rights guaranteed by the Fourteenth Amendment

Because of this, the Firefighters respectfully request that the Court enter an Order denying Defendant's Motion for Reconsideration, and granting such other relief as it deems appropriate.

        Respectfully submitted,

        **WILLIG, WILLIAMS & DAVIDSON**

By: _____
RALPH J. TETI, ESQUIRE
Attorney I.D. Number 21499
RICHARD G. POULSON, ESQUIRE
Attorney I.D. Number 80843
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103   (215) 656-3600

Dated: October 29, 2003        Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that, on this date, a true and correct copy of Plaintiffs' Brief in Opposition to the Defendant's Motion for Reconsideration was served by First Class U.S. Mail, postage pre-paid, upon the following:

>Shelley R. Smith
>Chief Deputy City Solicitor
>City of Philadelphia Law Department
>1515 Arch Street, 16th Floor
>Philadelphia, PA 19102-1595

By: _____
RICHARD G. POULSON, ESQUIRE
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

Dated: October 29, 2003

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILADELPHIA FIRE FIGHTERS' UNION,<br>I.A.F.F. LOCAL 22, AFL-CIO, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>CITY OF PHILADELPHIA,<br><br>　　　　　Defendant | :<br>:<br>:　CIVIL ACTION<br>:<br>:　No.  02-CV-4653<br>:<br>:<br>:<br>:<br>:<br>: |

### ORDER

**AND NOW**, this      day of            2003, upon consideration of Defendant's Motion for Reconsideration and Plaintiffs' Brief in Opposition to Defendant's Motion of Reconsideration, all responses thereto, and any oral argument thereon, **IT IS HEREBY ORDERED** that Defendant's Motion is **DENIED**.

**BY THE COURT:**

_____

**Dalzell, J.**

13