**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PHILADELPHIA FIRE FIGHTERS' UNION, | : | |
| I.A.F.F. LOCAL 22, AFL-CIO, et al., | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | No. 02-CV-4653 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendant | : | |
| _____ | : | |


**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR STAY
PENDING RECONSIDERATION AND APPEAL**


**I.  INTRODUCTION**

Plaintiffs, Philadelphia Fire Fighters' Union, IAFF Local 22, AFL-CIO (the "Firefighters"), Thomas O'Drain, Gerard Kots and Anthony Cubbage submit this Brief in Opposition to the City of Philadelphia's Motion for a Stay Pending Reconsideration and Appeal of the Court's October 6, 2003 Memorandum and Order in this case.

In its Motion, City mainly argues that a stay of the Court's October 6 Order is warranted because the Court "did not have the benefit of a Supreme Court decision issued after briefing in this case that contradicts two major assertions underpinning the Court's decision in this case."  (City Memorandum, at 2.)  The City's Motion must be denied, however, because the Supreme Court decision that it relies upon does not change the requirement that the City be held to satisfy the onerous NTEU balancing test in order to justify its Anti-Contribution Rules, and that the City completely failed to do so.  In addition, a stay is doubly inappropriate here because such action would

irreparably injure the Firefighters by unduly burdening their First Amendment freedom of political expression

## II.  ARGUMENT

### The City The City Has Not Stated Grounds Entitling It To a Stay Pending Reconsideration and Appeal

Under Federal Rule of Civil Procedure 62(c), a court in its discretion may "suspend, modify, restore or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."  There are four factors that regulate the issuance of a stay under this rule:

(1) whether the stay applicant has made a strong showing that they are likely to succeed in the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where he public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).  The burden of meeting this standard is a heavy one.  Freethought Society v. Chester County, 194 F.Supp.2d 437, 439 (E.D. Pa. 2002) (citing Wright & Miller, Federal Practice and Procedure).

Here, the City seeks to continue to muzzle the political expression of the City's 2,400 uniformed Firefighters, while allowing the exact same conduct by 20,000 other City employees during the pendency of its challenge to the Court's October 6, 2003

Memorandum and Order.  This attempt to squelch expression must fail, however, because the City has completely failed satisfy the Hilton test.

### A.  The City Has Failed to Make a Strong Showing of Success on the Merits

As explained in greater detail in Plaintiffs' Brief in Opposition to the City's Motion for Reconsideration, the City is unlikely to succeed on the merits concerning reconsideration or on further appeal.  The City's Motion is based on its assertion that the U.S. Supreme Court's decision in Federal Election Commission v. Beaumont, 123 S.Ct. 2200, 2210 (U.S. June 16, 2003), constitutes a change in controlling law governing the constitutionality of prior restraints on public employee speech.  This is not accurate.

In Beaumont, the Supreme Court merely refined the well-established distinction between political expenditures and contributions in terms of First Amendment scrutiny, dating back to Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), in determining that a ban on direct corporate political contributions did not violate the First Amendment.  The Court reinforced the longstanding appropriateness of corporate contribution-restrictions, and specifically noted that alternate methods of political expression (PAC's) were available to those entities.

Here, the City of Philadelphia has gone much farther, implementing a complete ban not on corporate or union contributions, but against any and all individual political contributions by firefighters, even to a political action committee.  As a result, the City's action against its public employees leaves those individuals with no other avenue in which to express their views in the form of contributions.

3

This sort or restriction – a prior restraint on the expression of public employees – warrants application of the onerous balancing test set forth by the Supreme Court in United States v. National Treasury Employees Union (NTEU), 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed. 2d 964 (1995); Swartzwelder v. City of Pittsburgh, 297 F.3d 228, 235 (3d Cir. 2002).  The Court in this case correctly identified and applied the NTEU test in order to determine that the Anti-Contribution Rules are unconstitutional.  And, despite the City's argument, the Court's decision in Federal Election Commission v. Beaumont does nothing to change the requirement that the Court utilize the NTEU test here. Instead, the decision merely reaffirms Buckley's distinction between political expenditures and political contributions, which is not disputed by the Firefighters in this case.  The Beaumont decision has no effect on the instant case, and because of this the City has failed to show that it is likely to succeed on the merits.

**B.  There is No Risk of Irreparable Injury to the City Absent a Stay**

In its Motion, the City argues that the Court's failure to grant a stay will result in "uncertainty, confusion and noncompliance."  (City memorandum, at 3.)  But this assertion is unsupported and completely contradicts record evidence in this case.

First, it is undisputed here that the Philadelphia Fire Department issues a General Memorandum to its employees each year, which specifically addresses uniformed members' ability make political contributions.  (Stipulations, at ¶51.)[1]  The Fire Department re-issues its Political Activity memorandum during every election cycle,

---

[1]  The most recent General Memorandum (No. 02-78, "Political Activity of City Employees"), dated October 15, 2002, prohibits uniformed members of the Fire Department from making political contributions.

4

at the request of the Personnel Department.  (Stipulations, at ¶52.)  Thus, the Fire

Department has an existing, reliable and effective method of communicating with its

uniformed members concerning acceptable and unacceptable political activity.

In order to alleviate the risk of "uncertainty, confusion and noncompliance" that

the City fears, it need only re-issue the Political Activity general memorandum with a

revised contribution section.  In the alternative, the Department could issue an entirely

new general memorandum solely on contributions, which would make clear that

uniformed members are now free to make political contributions.  And in the event that

the Memorandum and Order were reversed on appeal, the Commissioner could simply

reflect that change in a new general memorandum.[2]

Further, there is no risk that political influence and the perception of same will

infiltrate the fire service absent a stay.  As proof of that, one need only look to the City's

Civil Service protections on employment and advancement, as well as the lack of

similar problems with City employees who are permitted to make political contributions.

Simply put, enforcement of the Court's Order will not irreparably harm the City,

and the request for a stay must be denied.

## C. A Stay Will Cause Substantial Injury to the Firefighters

In contrast to the lack of harm to the City, this Court's issuance of a stay clearly

would cause irreparable harm to the Firefighters, because it will prevent them from

---

[2] This method of informing uniformed fire fighters of restrictions must be
effective, since there has been no instance in which a uniformed member has been
disciplined for making an improper political contribution.  It appears, then, that the
Commissioner's memoranda are distributed, understood and followed by his
firefighters.

engaging in permissible political expression.  "The loss of First Amendment freedoms, for even minimal periods of time, <u>unquestionably</u> constitutes irreparable injury."  <u>Elrod v. Burns</u>, 427 U.S. 347, 373-74, 96 S.Ct. 2673, 40 L.Ed.2d 547 (1976)(emphasis added).  Because of this, and as this Court has recently observed, "stays are commonly denied in First Amendment cases."  <u>Freethought</u>, 194 F.Supp2d at 441.  And to paraphrase language used by the Court in its <u>Freethought</u> decision, the Anti-Contribution Rules have already rebuked the First Amendment for over fifty years, their removal from the City charter is "long overdue," and the failure to do so pending appeal will irreparably harm the Firefighters.

### D.  A Stay Will Not Serve the Public Interest

Finally, the City has failed to prove that a stay in this case would serve the public interest.  Indeed, the City acknowledges that the Court correctly observed that the public has an interest in Firefighters' participation in the political process.  We agree.

And to the extent that the City argues that "the public interest lies in the City's ability to keep its political activities restrictions as consistent as possible," the Firefighters agree on that point as well.  This consistency, of course, is exactly what the October 6, Memorandum and Opinion has done, by bringing the uniformed fire restrictions in line with those applied to the vast majority of City employees who are free to make voluntary political contributions.

Thus, the issuance of a stay will contradict the City's asserted interests as well as the public interest in permitting firefighters to express themselves by making political contributions.  Because the City has not shown otherwise, it has failed to establish that

6

it is entitled to a stay of the Court's October 6 and Order, and its Motion for a Stay must be denied.

III. <u>CONCLUSION</u>

Based on the above, the City has failed to satisfy the <u>Hilton</u> test for issuance of a stay. As a result, the City is not entitled to a stay of the Court's October 6, 2003 Order declaring the City's Home Rule Charter and Civil Service Regulations prohibiting political contributions from uniformed firefighters to be unconstitutional, and permanently enjoining the City from enforcing those Anti-Contribution Rules with respect to Firefighters.

Because of this, the Firefighters respectfully request that the Court enter an Order denying Defendant's Motion for Stay Pending Reconsideration and Appeal, and granting such other relief as it deems appropriate.

Respectfully submitted,

**WILLIG, WILLIAMS & DAVIDSON**

By: _____
RALPH J. TETI, ESQUIRE
Attorney I.D. Number 21499
RICHARD G. POULSON, ESQUIRE
Attorney I.D. Number 80843
1845 Walnut Street, 24th Floor

7

Philadelphia, PA 19103   (215) 656-3600

Dated: October 29, 2003                    Attorneys for Plaintiffs

### CERTIFICATE OF SERVICE

I certify that, on this date, a true and correct copy of Plaintiffs' Brief in Opposition to the Defendant's Motion for Stay Pending Reconsideration and Appeal was served by First Class U.S. Mail, postage pre-paid, upon the following:

Shelley R. Smith
Chief Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102-1595

By:    _____
RICHARD G. POULSON, ESQUIRE
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

Dated: October 29, 2003

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PHILADELPHIA FIRE FIGHTERS' UNION, I.A.F.F. LOCAL 22, AFL-CIO, et al., | : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | No. 02-CV-4653 |
| CITY OF PHILADELPHIA, | : : | |
| Defendant | : : | |

**ORDER**

**AND NOW**, this      day of                  2003, upon consideration of Defendant's Motion for Stay Pending Reconsideration and Appeal, and Plaintiffs' Brief in Opposition to Defendant's Motion, all responses thereto, and any oral argument thereon, **IT IS HEREBY ORDERED** that Defendant's Motion is **DENIED**.

**BY THE COURT:**

9

_____

**Dalzell, J.**